IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

ANGELA K. MARVETS,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-2096

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION ............................................ 1

II.   PRINCIPLES OF REVIEW ................................ 2

III.  FACTS ........................................................... 3

IV.  CONCLUSIONS OF LAW ................................. 4
    A.   ALJ's Disability Determination ..................... 4
    B.   Objections Raised By Claimant ..................... 7
        1.   Dr. Kettman's Opinions ......................... 7
        2.   Severe Impairment ............................... 15

V.    CONCLUSION ............................................... 17

VI.  ORDER ........................................................ 17

*I. INTRODUCTION*

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Angela K. Marvets on November 12, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability

insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Marvets asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Marvets requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quotation omitted). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

---

[1] On April 12, 2016, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

Marvets was born in 1977. She did not graduate from high school, but later earned a GED. In the past, she worked as a telemarketer, meat products packager, screen printer, and cook/kitchen helper.

Marvets filed her application for SSI benefits on March 16, 2012, and her application for disability insurance benefits on April 18, 2012. She claimed disability based on back problems, depression, bipolar disorder, anxiety, PTSD, panic attacks, and obesity. She alleged she became disabled on September 18, 2008. Her applications were

3

denied upon initial review, and on reconsideration. On August 21, 2013, Marvets appeared via video conference with her attorney before Administrative Law Judge ("ALJ") Tela L. Gatewood for an administrative hearing. In a decision dated September 23, 2014, the ALJ denied Marvets' claims. The ALJ determined Marvets was not disabled and not entitled to disability insurance benefits or SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Marvets appealed the ALJ's decision. On September 16, 2015, the Appeals Council denied Marvets' request for review. Consequently, the ALJ's September 23, 2014 decision was adopted as the Commissioner's final decision.

On November 12, 2015, Marvets filed the instant action for judicial review. A briefing schedule was entered on February 16, 2016. On May 23, 2016, Marvets filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy. On June 29, 2016, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision.

Additionally, on May 2, 2016, the parties filed a joint statement of facts addressing Marvets' background, the case's procedural history, testimony from the administrative hearing, and Marvets' medical history. *See* docket number 11. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of the legal issues presented.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Marvets was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security

regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the

claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Marvets had not engaged in substantial gainful activity since September 18, 2008. At the second step, the ALJ concluded from the medical evidence Marvets had the following severe impairments: obesity, lumbar disc disease, mood disorder/depressive disorder, anxiety, and personality disorder. At the third step, the ALJ found Marvets did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Marvets' RFC as follows:

> [Marvets] has the residual functional capacity to perform a range of light work[.] . . . [Marvets] can lift and/or carry and push and/or pull twenty pounds occasionally, ten pounds frequently. She can stand and/or walk, with normal breaks, for a total of six hours in a workday. She can sit, with normal breaks, for a total of six hours in a workday. [Marvets] can balance, crouch, stoop, kneel, crawl, and climb ramps or stairs occasionally. She cannot climb ladders, ropes, or scaffolds. She cannot work at unprotected heights or around hazards. [Marvets] cannot work in temperature extremes or in high humidity. [She] can perform simple, routine, repetitive tasks. She can work with co-workers and supervisors on a superficial basis. She cannot work with the public.

(Administrative Record at 18.) Also at the fourth step, the ALJ determined Marvets is unable to perform her past relevant work. At the fifth step, the ALJ determined based on her age, education, previous work experience, and RFC, Marvets could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Marvets was not disabled.

### B. Objections Raised By Claimant

Marvets argues the ALJ erred in two respects. First, Marvets argues the ALJ failed to properly evaluate the opinions of Dr. Matthew Kettman, a treating physician. Second, Marvets argues the ALJ erred by failing to determine her carpal tunnel syndrome was a severe impairment.

### 1. Dr. Kettman's Opinions

Marvets argues the ALJ failed to properly evaluate and weigh the opinions of her treating physician, Dr. Kettman. Marvets also argues the ALJ failed to give "good" reasons for discounting Dr. Kettman's opinions. Marvets concludes this matter should be remanded for further consideration of Dr. Kettman's opinions.

On August 19, 2013, at the request of Marvets' attorney, Dr. Kettman filled out a "Physical Residual Functional Capacity Questionnaire" for Marvets. Dr. Kettman diagnosed Marvets with back pain, anxiety, depression, bipolar disorder, and bilateral carpal tunnel syndrome. Dr. Kettman opined Marvets' experience of pain was severe enough to "constantly" interfere with her attention and concentration. Dr. Kettman indicated that Marvets would have a "severe limitation" with the ability to deal with work stress. Dr. Kettman determined Marvets could: (1) walk for less than one block without rest; (2) sit at one time continuously for only 5 minutes; (3) stand at one time continuously for only 5 minutes; and (4) sit, stand, and walk for less than two hours in an eight-hour workday. Dr. Kettman estimated Marvets would need to get up, change position, and walk for about 5 minutes every 5 minutes during an eight-hour workday. Dr. Kettman

also suggested Marvets would need an unscheduled break every half-hour lasting about 15 minutes. Dr. Kettman opined Marvets should do no lifting in a competitive work situation. Dr. Kettman found Marvets could only grasp, finger, and reach less than 20 percent of the time during a typical eight-hour workday because her hands "hurt and go numb." Lastly, Dr. Kettman estimated Marvets would miss more than 3 days of work per month due to her impairments or treatment for her impairments.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given

controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

Finally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In her decision, the ALJ addressed the opinions of Dr. Kettman as follows:

> In August 2013, [Marvets'] prior primary care physician, Matt Kettman, M.D., also suggested that [Marvets] had an inability to stand, walk and sit for two hours. He also indicated that

9

> [she] had manipulative limitations due to her mild carpal tunnel syndrome. He opined further that [Marvets] could lift nothing whatsoever (Exhibit 23F). Even though Dr. Kettman said he last treated [Marvets] in April of 2013, there was no evidence he had seen her since June of 2012, when [she] asked for a disability statement. Due to the lack of objective medical evidence supporting disabling limitations, this opinion, even though it is from a treating source, the opinions of Dr. Kettman are afforded little weight. Such limitations are not supported by any objective data, and they appear to address only [Marvets'] own perceived limitations. The proximity to the hearing suggests that Dr. Kettman merely is advocating for [Marvets'] financial interests. Further, other sources, including specialists showed normal gait and mood. [Marvets] reported greater activities to her therapist, but she reported fewer activities to the Social Security Administration and at the hearing.

(Administrative Record at 23.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Kettman. The Court also finds that the ALJ provided "good reasons" for discounting Dr. Kettman's opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Moreover, the Court is unpersuaded by Marvets' assertion that the ALJ's reasons for discounting Dr. Kettman's opinions are flawed because "the ALJ believed Dr. Kettman had not treated Ms. Marvets since June 2012," when in fact, Dr. Kettman last treated Marvets in December 2012.[2] In her brief, the Commissioner responds to Marvets' argument as follows:

---

[2] *See* Marvets' Brief (docket number 14) at 5.

> The ALJ's statement that there was no evidence Dr. Kettman had seen [Marvets] since June 2012 appears to be Scrivener's error. . . . Dr. Kettman's June 2012 medical report is in Exhibit 21F. Exhibit 21F also contains seven other medical reports from Dr. Kettman dated June 2012 through December 2012. Consistent with the ALJ's statement [Marvets] asked for a disability statement on the last date of Dr. Kettman's treatment, the December 2012 reason for visit included completion of "paperwork" (Tr. 713). Thus, contrary to [Marvets'] suggestion that the ALJ believed Dr. Kettman did not see her after June 2012, it seems unlikely the ALJ would be unaware of medical reports in an exhibit he actually cited, suggesting the ALJ simply wrote the wrong month.

Commissioner's Brief (docket number 17) at 10-11. The Court agrees with the Commissioner. The ALJ's citation to June 2012 instead of December 2012 appears to be a mistake which does not affect the outcome of this case. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("We have held that 'an "arguable deficiency in opinion-writing technique" does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.' *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)."). Moreover, even if the ALJ had correctly stated December 2012, instead of June 2012, there still would have been an eight-month gap between Dr. Kettman's last treatment of Marvets and his medical source statement. Such a gap in treatment is a factor the ALJ may properly consider in weighing Dr. Kettman's opinions. *See Wiese*, 552 F.3d at 731 (providing treating relationship as a factor to consider when weighing a treating source opinion). The Court finds no merit to Marvets' assertion on this issue.

In her brief, Marvets also argues the ALJ did not properly consider her obesity when weighing Dr. Kettman's opinions. It is unclear to the Court what the connection is between Marvets' obesity and Dr. Kettman's opinions, as Dr. Kettman does not address Marvets' obesity in his medical source statement. Nevertheless, the Court will address the ALJ's consideration of Marvets' obesity. Social Security Ruling ("SSR") 02-1p provides

that the Social Security Administration considers "obesity to be a medically determinable impairment and reminds adjudicators to consider the effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The ruling also instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id.*

In addressing Marvets' obesity, the ALJ stated:

> [Marvets'] obesity was evaluated under Social Security Ruling 02-1p, and her obesity was not of such a level that it resulted in an inability to ambulate. Her gait was normal for speed, stability, and safety; she did not require any assistive device. [She] was encouraged to exercise and diet, which she had not done. The Administrative Law Judge finds [Marvets'] obesity to be severe, but the signs, symptoms, and laboratory findings do not establish that her obesity has increased in severity coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listed impairment. Nevertheless, the Administrative Law Judge fully considered [Marvets'] obesity when reaching the findings herein, and the limitations resulting from [her] obesity are reflected in the below residual functional capacity assessment.

(Administrative Record at 16.) Having reviewed the entire record, the Court concludes the ALJ fully considered Marvets' obesity in making her RFC and disability determinations in accordance with SSR 02-1p. Moreover, the Court finds the ALJ's consideration of Marvets' obesity does not detract from her weighing of Dr. Kettman's opinions.

Finally, Marvets argues Dr. Kettman's opinions are consistent with the opinions of Tara Keiser, ARNP, her treating nurse practitioner, who also found significant lifting,

standing/walking, and sitting limitations for Marvets.[3] While Dr. Kettman's opinions and Keiser's opinions are consistent with one another, Marvets in her brief does not argue or dispute that the ALJ properly discounted Keiser's opinions. Specifically, the ALJ determined:

> In July of 2013, [Marvets'] primary care nurse practitioner Tara Keiser, suggested that [Marvets] had no ability to lift more than ten pounds, sit for more than two hours total or to stand and/or walk for more than two hours total in an eight-hour day. She described [Marvets] as being nearly bedridden and needing extra breaks with expected frequent work absences (Exhibit 22F). The medical evidence of record does not support such extreme limitations. [Marvets] has moderate degenerative disc disease not requiring any surgery. [Her] neurologists and pain management specialists showed normal gait. [Marvets] had treatment with Ms. Keiser in 2013, but Ms. Keiser only prescribed Vicodin for back pain, even though [Marvets] refused the pain management referral offered at the University of Iowa Hospitals and Clinics, offered by Dr. Hitchon.

(Administrative Record at 23.)

In considering Keiser's opinions, an ALJ must apply the principles set forth in the Social Security Regulations for a treating source that is not classified as an "acceptable medical source." The Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a nurse practitioner, "it would be appropriate to

---

[3] *See* Administrative Record at 737-41 (Keiser's opinions in her answers to "Physical Residual Functional Capacity Questionnaire").

13

consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

Having reviewed the entire record, the Court finds that the ALJ properly considered Keiser's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated his reasons for discounting Keiser's opinions, and for finding her opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."); *see also Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a medical source that is not an "acceptable medical source" is the consistency of such as source's opinions with the record as a whole). Therefore, contrary to Marvets' argument, the ALJ's proper discounting of Keiser's opinions supports her

14

discounting of Dr. Kettman's opinions, as both sets of opinions are inconsistent with substantial evidence in the record as a whole.

In summary, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Kettman. The Court also finds that the ALJ provided "good reasons" for discounting Dr. Kettman's opinions. Furthermore, the ALJ fully considered Marvets' obesity in making her RFC and disability determinations in accordance with SSR 02-1p. Finally, the Court finds that the ALJ properly considered Keiser's opinions in accordance with SSR 06-03p. Even if inconsistent conclusions could be drawn on whether the ALJ properly weighed Dr. Kettman's opinions or considered his opinions in conjunction with other evidence in the record, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Severe Impairment

Marvets argues the ALJ erred in her assessment at step 2 of the sequential analysis by failing to find her carpal tunnel syndrome to be a severe impairment. Marvets maintains the ALJ's determination that her carpal tunnel syndrome is not a severe impairment is not supported by substantial evidence. Marvets concludes that the ALJ's failure to find a severe impairment at step 2 of the sequential analysis warrants reversal.

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted). In other words, if the impairment would only have a minimal effect on a claimant's ability to work, then it would not constitute a severe impairment. *Id.* (citation omitted). The burden is on the claimant to establish his or her impairment(s) is severe. *Id.* (citation omitted). According to the Eighth Circuit Court of Appeals "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous

occasions the Commissioner's finding that claimant failed to make this showing." *Id.* at 708 (citations omitted).

In her decision, the ALJ addressed Marvets' diagnosis of carpal tunnel syndrome as follows:

> [Marvets] has a diagnosis of mild carpal tunnel syndrome, given by neurologist Ivo Bekavac, M.D. (Exhibit 17F, p. 4, Exhibit 21F, p. 5). No treatment has been recommended. Therefore, the Administrative Law Judge finds that this impairment is not severe.

(Administrative Record at 14.) While Dr. Bekavac did suggest wearing wrist splints, he provided no work restrictions and offered no opinions on functional limitations with regard to Marvets' diagnosis of mild carpal tunnel syndrome. Additionally, the ALJ also addressed Marvets' diagnosis of carpal tunnel syndrome as it related to her musculoskeletal impairments:

> In order to meet the requirements for [Listings] Section 1.02 and Section 1.03, [Marvets] must show gross anatomical deformity and chronic joint pain and stiffness in the upper extremities with limited motion and an inability bilaterally to perform fine and gross movements effectively. . . . There is no separate listed impairment for carpal tunnel syndrome. . . . [Marvets] does not have findings of loss of gait and station, nor are there findings of lack of gross and fine manipulation lasting for twelve or more consecutive months. There is no evidence of joint dysfunction, destruction, ankylosis, or malformation. . . . She does not have consistent evidence of reflex loss, motor loss, sensory loss, muscle atrophy, . . . or other findings to meet the requirements for listed musculoskeletal impairments.

(Administrative Record at 15.) Finally, other than Dr. Kettman, whose opinions were properly discounted (*see* section *IV.B.1* above), no medical sources found Marvets had functional limitations due to carpal tunnel syndrome.

16

Having reviewed the entire record, the Court concludes Marvets has not met her burden to show that her carpal tunnel syndrome significantly limits her ability to perform basic work activities. *See Kirby*, 500 F.3d at 707-08. The Court also finds the ALJ thoroughly considered and properly addressed Marvets' diagnosis of mild carpal tunnel syndrome. Accordingly, the Court finds the ALJ's determination at step 2 of the sequential test, that Marvets' carpal tunnel syndrome is not a severe impairment, is supported by substantial evidence. *See Anderson*, 696 F.3d at 793. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## V. CONCLUSION

The Court finds the ALJ properly evaluated and weighed the opinion evidence provided by Dr. Kettman. Furthermore, the Court finds the ALJ properly determined Marvets' diagnosis of mild carpal tunnel syndrome was not a severe impairment. Accordingly, the Court concludes the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 24th day of October, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA